COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

SHELDON LEE MONGOLD

MEMORANDUM OPINION[*]

v.      Record No. 1796-15-3                                    PER CURIAM
                                                               MAY 24, 2016

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

(Tania L. Perez Rodriguez; John Elledge & Assoc PC, on brief), for
appellant.

(Rachel Errett Figura, Assistant County Attorney; Hallet M.
Culbreth, Guardian *ad litem* for the minor child; Rockingham
County Attorney's Office, on brief), for appellee.

Sheldon Lee Mongold (father) appeals an order terminating his parental rights. Father

argues that because the Harrisonburg Rockingham Social Services District (the Department)

provided "little to no services" to allow father to remedy the conditions that led to the child's

placement in foster care the trial court erred by finding that the termination of his parental rights was

appropriate and in the child's best interests. Upon reviewing the record and briefs of the parties,

we summarily affirm the decision of the trial court pursuant to Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

H.M., the child who is the subject of this appeal, was born in January 2012. Father and Felicia Feaster (mother) are H.M.'s biological parents. They agreed to joint legal custody and shared physical custody. Mother did not have permanent housing, so she resided in motels, with friends, or in shelters. Father, a felon,[1] also did not have permanent housing and frequently worked out of town. When he was in town, he resided in motels, with friends, or with his parents. In 2012, the Department investigated a supervision concern and told father that the paternal grandparents should not be providing child care due to their physical and mental limitations. The Department remained involved with the family and investigated concerns regarding supervision, exposure to drug use, lack of housing, and medical neglect.

On May 3, 2014, there was a domestic violence incident between mother and her then boyfriend, not H.M.'s father. As a result of the incident, mother's younger child, J.F., was removed from her custody and placed in foster care.[2] Father had custody of H.M. at the time, but left the child with his parents when he went out of town to work. The Department opened a supervision investigation and again advised father that the paternal grandparents were not suitable caregivers due to their mental and physical health problems. Father told the Department that he did not have other child care options. The Department paid the processing fee for father to place the child in Harrisonburg-Rockingham Day Care, but father never used those day care services.

In June 2014, the Department learned that the child again was left in the care of the paternal grandparents. Father was working out of town, so mother took the child. On June 18, 2014, mother was asked to leave the domestic violence shelter where she was staying. Mother

_____

[1] Between 1996 and 2007, father was convicted of numerous felonies, including breaking and entering, grand larceny, arson, and possession of methamphetamine with the intent to distribute.

[2] H.M.'s father is not the biological father of J.F.

went to the Department to discuss her plans, but she was unable to provide housing for her and H.M. The Department contacted father, who arranged for mother to stay in a hotel for the night. On June 19, 2014, the Department checked on mother and H.M. Mother had no plans for housing, employment or transportation. The Department could not reach father. Finding no viable options for H.M., the Department removed the child and placed him in foster care.

At the preliminary removal hearing, both parents submitted to drug screens. Mother tested positive for marijuana, and father tested positive for methamphetamines. On July 23, 2014, the Harrisonburg/Rockingham County Juvenile and Domestic Relations District Court (the JDR court) found H.M. to be an abused and/or neglected child. The Department offered father supervised visitation, but imposed several requirements on him. He was directed to maintain stable employment, obtain housing, and ensure adequate transportation for H.M. to keep medical appointments. In addition, father was required to participate in substance abuse treatment and to demonstrate a commitment to sobriety. He had to find adequate and consistent child care, which did not include the paternal grandparents, and had to participate in parenting classes and a monthly parenting group.

To assist father in fulfilling these requirements, the Department referred him to Harrisonburg-Rockingham Community Services Board (CSB) for a substance abuse assessment, but father did not seek substance abuse treatment through CSB. Father did sign up for a substance abuse group through his probation officer, but he did not complete the program. The Department also referred father for a psychological assessment, which father completed despite missing or arriving late to several appointments.

In addition, the Department referred father to parenting classes. Although father started the classes, he did not complete them. Furthermore, the Department was willing to assist father with child care and paid the enrollment fee to the Harrisonburg-Rockingham Day Care. Father

did not utilize this service. The Department also recommended that father register with the housing authority, but because of his felony convictions, father was ineligible to receive assistance through the housing authority.

As a result of father's previous felony convictions, he was on probation when the child was placed in foster care. Father's probation was extended indefinitely in 2013. Due to positive drug tests and absconding from supervision, father was found to have violated his probation and sentenced to time served in October 2014. Father tested positive for amphetamines on October 27 and November 5, 2014. Consequently, father was found to have violated his probation and was sentenced to eight months in jail. He was released on June 26, 2015 and placed back on supervised probation. On July 2, 2015, father reported to probation and tested positive for amphetamines. He also tested positive on August 12, 2015. On October 12, 2015, father was found to have violated his probation and was sentenced to six months' incarceration. He also was ordered to complete the diversion and detention programs.

On May 1, 2015, the Department filed petitions to terminate father's and mother's parental rights. On August 12, 2015, the JDR court terminated their parental rights. Both parents appealed to the circuit court.

On October 27, 2015, the parties appeared before the circuit court. At the time of the hearing, father was incarcerated for his seventh probation violation. He testified that he expected to complete the detention and diversion center programs by 2017, and then he would need approximately six months after his release to get settled. After hearing the evidence and argument, the trial court took the matter under advisement. On October 29, 2015, the trial court issued its ruling from the bench and found that it was in the child's best interests to terminate

both parents' parental rights pursuant to Code § 16.1-283(C)(2). The trial court entered orders memorializing its rulings. This appeal followed.[3]

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(2). Father contends the Department failed to offer him adequate services to remedy the situation that led to the child being placed in foster care.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

---

[3] Mother also appealed the circuit court's decision to terminate her parental rights. See Feaster v. Harrisonburg Rockingham Soc. Servs. Dist., Record No. 0140-16-3.

Father did not have stable housing and could not provide appropriate child care, and he has a history of substance abuse. He asserts that the Department should have assisted him more with housing because he was ineligible for assistance through the housing authority. Although he acknowledges that his probation officer referred him to a substance abuse group, he contends the Department should have referred him to "a more intensive substance abuse program."

Despite father's arguments, the evidence proved that the Department offered father numerous services. Father did not participate in or complete many of the recommended services. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

For example, father received referrals to the CSB for substance abuse treatment; however, father admitted that he never went to CSB. His probation officer referred him to a substance abuse treatment group, but father did not complete the sixteen-week program. He continually tested positive for methamphetamines while the child was in foster care. As a result of positive drug screens, he was found to have violated his probation. Finally, as part of his sentence for his seventh probation violation, father was ordered to attend the detention and diversion programs.

The Department also referred father to Dr. Joann Grayson for a psychological and parenting evaluation, which father completed. Dr. Grayson determined that father was "resistant to change" and "unwilling to change." Dr. Grayson forewarned that if father had custody of H.M., father likely would move to a different jurisdiction "where he is under less scrutiny." In addition, father did not attend the recommended monthly parenting group and failed to complete the parenting classes to which he had been referred by the Department. Dr. Grayson noted that father's "child development and child management skills appear limited."

Father admittedly was not in a position to have custody of the child at the time of the circuit court hearing in October 2015, and he asked for additional time to improve his situation. By this time, however, H.M. had been in foster care for sixteen months. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the totality of the circumstances, the trial court did not err in finding that father was unwilling or unable to remedy substantially, within a twelve-month period, the conditions that resulted in H.M.'s foster care placement, and therefore did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.